IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HAROLD H. HODGE, JR.,** | * |
| Plaintiff, | * |
| v. | *   Civ. No. DLB-23-3463 |
| **MGM NATIONAL HARBOR, LLC,** *et al.* | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Harold H. Hodge, Jr., who is proceeding without counsel, sued MGM National Harbor, LLC ("MGM"), MGM's purported parent companies, two of MGM's corporate officers, and two MGM employees for violations of federal discrimination laws and state tort laws.[1] MGM asserted two state law counterclaims against Hodge for his alleged breach of a settlement agreement with MGM in an unrelated case. Pending are MGM's motion to dismiss Hodge's complaint and Hodge's cross-motion to dismiss MGM's counterclaims. MGM's motion to dismiss under Rule 12(b)(6) is granted in part. Hodge has not stated a federal claim. The Court declines to exercise supplemental jurisdiction over his and MGM's state law claims. Hodge's claims and MGM's counterclaims are dismissed without prejudice. Hodge's motion to dismiss MGM's counterclaims under Rule 12(b)(6) is denied as moot.

**I.    Relevant Background**

The following allegations are taken from Hodge's complaint and accepted as true for purposes of the motions to dismiss. *See Nadendla v. WakeMed*, 24 F.4th 299, 302 n.1 (4th Cir. 2022).

---

[1] Unless otherwise noted, the Court refers to the defendants collectively as "MGM."

On July 5, 2023, Hodge was gambling on a slot machine at MGM's casino in National Harbor. ECF 1, ¶¶ 21–22. On these slot machines, a player first selects his wager amount. *Id.* ¶ 23. If he selects a wager amount of $0.88 or greater, he is eligible to win the "Grand Jackpot." *Id.* A person could win the Grand Jackpot by "pick[ing] three alike of the Chinese doll heads with the rubies on their head . . . ." *Id.* ¶ 29. "[T]he doll heads could be anywhere on the slot machine screen, no order required." *Id.*

Hodge set his wager at $0.88. *Id.* ¶ 26. The slot machine then revealed three matching doll figures with "red rubies around their heads." *Id.* ¶ 27. Hodge claims he won the $23,000 "Grand Jackpot" prize. *Id.* ¶ 28.

But "three to five seconds" after Hodge won the "Grand Jackpot," the machine showed that he won the "Minor Jackpot," which was a prize of $27.00 *Id.* ¶ 32. Even so, Hodge could see his three matching doll figures on the screen. *Id.* ¶ 33. Hodge asked a woman playing nearby if she saw him win the Grand Jackpot, and the woman said yes. *Id.* ¶ 36.

Hodge pressed the slot machine's assistance button. *Id.* ¶ 40. An MGM employee named Rav came over a few minutes later. *Id.* ¶ 41. Hodge explained to Rav that he had selected the three matching doll figures and had won the $23,000 Grand Jackpot. *Id.* ¶¶ 42–43. Rav asked Hodge whether he had selected the correct wager amount and Hodge replied that he had. *Id.* ¶ 44. Rav also told Hodge that the doll figures needed "to be lined up on the slot machine [in] a certain way," but Hodge told her that was not true. *Id.* ¶ 46. He told her that he had played that slot machine "many times" at MGM and was aware of the rules. *Id.* ¶ 47.

Hodge suggested that Rav watch the security camera footage. *Id.* ¶ 48. Rav agreed. *Id.* ¶ 49. The slot machine allows employees to rewind and view earlier games customers have played. *Id.*

2

Rav rewound the machine, and she and Hodge viewed his game. *Id.* Hodge admits that the rewound footage did not show him winning the Grand Jackpot. *Id.*

Hodge told Rav he wished to speak to a manager. *Id.* ¶ 50. Rav asked for manager assistance on her walkie-talkie. *Id.* ¶ 51. Masud Hossain, MGM's Assistant Shift Manager of Slot Operations, came over to where Hodge and Rav were standing. *Id.* ¶¶ 52–53. Hodge explained that he had selected three matching doll figures and had won the Grand Jackpot, but the machine now showed that he had won only the Minor Jackpot. *Id.* ¶¶ 54–55. Hossain asked Rav whether she had watched the footage from the machine, even though Hodge believed the machine's footage would be less reliable than security camera footage from MGM's ceiling-mounted cameras. *Id.* ¶ 56. Hossain also asked Hodge to confirm his wager amount. *Id.* ¶ 57. Hodge confirmed that he had wagered $0.88. *Id.* He also suggested that Hossain watch the footage from MGM's ceiling-mounted cameras, which would show that Hodge won the Grand Jackpot. *Id.* Hossain asked Hodge to quiet down, although Hodge had not raised his voice. *Id.* Hodge believes Hossain's request was to prevent other customers from learning that MGM refused to pay him the Grand Jackpot. *Id.*

Hossain told Hodge that "he saw no fault with the slot machine." *Id.* ¶ 58. Hodge again asked Hossain to view the footage from the ceiling-mounted cameras. *Id.* ¶ 59. Hodge was adamant because he knew that there are over 2,000 cameras within the casino. *Id.* ¶ 62. Eventually, Hossain spoke to another MGM employee on his walkie-talkie and told him to check the footage on the ceiling-mounted cameras. *Id.* ¶ 60. Hossain then told Hodge that he would talk to someone about checking the cameras and would "be right back." *Id.* ¶ 61.

Five minutes later, Hossain returned. *Id.* ¶ 64. He told Hodge that the other employee viewed the security footage and that it did not show Hodge winning the Grand Jackpot. *Id.* It also showed nothing wrong with the machine. *Id.* Hodge told Hossain that he was lying and that he had

3

won. *Id.* ¶ 65. Hossain told Hodge, "O, I believe you." *Id.* ¶ 66. He then asked Hodge if he wished to keep playing the slot machine and Hodge declined. *Id.* ¶¶ 68–69. After Hodge declined, Hossain told Rav to shut down the slot machine. *Id.* ¶ 70. Hodge cashed out his "small winnings" and left the casino. *Id.* ¶ 71.

Hodge identifies as African American. *Id.* ¶ 8. According to Hodge, MGM's refusal to pay him the Grand Jackpot was racially motivated. *Id.* ¶ 91. That same day, Hodge witnessed another African American customer play the same slot machine four or five times. *Id.* ¶ 86. That patron also tried to win the Grand Jackpot. *Id.* But each time she tried, she too only won a smaller prize. *Id.* ¶ 88.

Hodge also notes that, in June 2023, a white male customer won a Grand Jackpot valued at over $10,000. *Id.* ¶ 90. MGM paid that customer but not Hodge. *Id.* Similarly, a year earlier, a white female customer told Hodge that she had won more than $30,000 on that slot machine. *Id.* ¶ 92. Indeed, MGM has paid out Grand Jackpots and other winnings to white and Asian customers but treated Hodge "indifferent[ly] and in a discriminatory fashion" by not paying him the $23,000 he had won. *Id.* ¶ 91. MGM even has paid out winnings of greater than $200,000 to white customers. *Id.* ¶ 93. These "pay outs [sic] to other patrons of other race[s] [and/or] other characteristics' [sic]" were greater than the $23,000 Hodge won and MGM refused to pay. *Id.* ¶ 94.

A few months after the incident, Hodge sent demand letters to MGM, MGM Resort International, and MGM's purported owner, Vici Properties. *Id.* ¶¶ 76–81. Hodge also emailed several MGM officers, including MGM's general manager. *Id.* ¶¶ 82–83. No one from MGM has responded to Hodge's letters or emails. *Id.* ¶ 85.

Hodge filed this complaint on December 21, 2023. ECF 1. He alleges state law violations and violations of federal discrimination laws against seven defendants: MGM National Harbor,

LLC; Vici Properties, Inc.; MGM Resort International; Edward Pitoniak in his capacity as Chief Executive Officer and president of Vici Properties, Inc.; William Hornbuckle, of MGM Resort International; and two MGM National Harbor employees: Hossain and "John Doe," the employee who viewed the security footage of Hodge playing the slot machine. *Id.* ¶¶ 104–45. He raises eight claims: a violation of 42 U.S.C. § 1981 (Count One); a violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a (Count Two); "pain and suffering" (Count Three); "embarrassment and shame" (Count Four); "thief" (Count Five); "false misrepresentation" (Count Six); a violation of the "Fair Business Practices Act" (Count Seven); and a violation of the "Consumer Fraud & Deceptive Business Practices Act" (Count Eight). *Id.* He seeks both monetary and injunctive relief. *Id.* at 25–26.

MGM counterclaimed on April 22, 2024. ECF 15. MGM alleges that it entered into a settlement agreement with Hodge in connection with another lawsuit, *Hodge v. MGM National Harbor, LLC*, No. TJS-21-cv-3293 (D. Md.). ECF 15, ¶ 7. Under the agreement, Hodge agreed to "waiv[e] any right to enter MGM's National Harbor's property" and acknowledged that MGM could deny him entry without incurring liability. *Id.* ¶ 12. In exchange, MGM paid Hodge $2,500. ECF 15-1, at 2. MGM alleges that Hodge's complaint shows that he entered MGM's property without consent and breached the settlement agreement. ECF 15, ¶¶ 21–22. MGM also brings a fraudulent inducement claim. *Id.* ¶¶ 26–32.

MGM moved to dismiss Hodge's complaint for failure to state a claim, ECF 14. Hodge cross-moved to dismiss MGM's counterclaims for failure to state a claim. ECF 25. The motions

are fully briefed. ECF 14-1, 25, 26-1, 28, 30, 31-1.[2] A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023).

**II.     Standard of Review**

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

---

[2] Hodge filed a "motion . . . to add to his pleadings and augment why the defendants['] counter-claims should be dismissed on the Civil Rights Act of 1964 – Public Accommodations." ECF 31. The Court liberally construes this motion as a motion to file an untimely reply brief. That motion is granted. Hodge also filed a "motion asking the Court to accept his motion of strong points in his pleadings." ECF 33. Essentially, he asks to file a surreply in opposition to MGM's motion to dismiss, ECF 33-1. That motion is denied because Hodge's proposed brief does not address any "new" or novel argument that MGM raised in its reply. *See* Loc. R. 105.2(a); *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) (holding that plaintiff was not entitled to file a surreply when the defendant's reply brief raised no new arguments requiring an additional response). Additionally, even if the Court liberally construed the motion to file a surreply as a motion for leave to amend the complaint to include the allegations stated in the proposed surreply and accepted the motion, Hodge still would not state a claim because the allegations do not remedy the deficiencies in his pleading.

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The Court must construe Hodge's pro se complaint liberally. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Instead, the Court need only "determine the actual meaning of the words used in the complaint." *Id.* Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016)).

The Court begins with Hodge's federal claims.

### III. Discussion

#### A. Federal Claims

Hodge fails to state a federal claim.

### 1. Count One: 42 U.S.C. § 1981

Hodge's first claim arises under 42 U.S.C. § 1981. Section 1981 provides that, "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 198l(b).

"To state a cause of action for a § 1981 violation, a plaintiff must show 'both that the defendant intended to discriminate [against the plaintiff] on the basis of race, and that the discrimination interfered with a contractual interest.'" *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 354 (4th Cir. 2024) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). The plaintiff must plead "that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). "[T]o survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements." *Nadendla*, 24 F.4th at 305.

Hodge does not allege facts from which the Court could infer that, but for his race, MGM would have paid him the Grand Jackpot. Hodge alleges that MGM has paid white customers and customers of other races their Grand Jackpot winnings, but not him. *See* ECF 1, ¶ 91 ("Moreover, the MGM National Harbor has paid out Grand Jack pots and Jackpot winnings to many white customers and other race of people of Asian [descent] for years; but treated Mr. Hodge indifferent[ly] and in a discriminatory fashion by not paying the Plaintiff his winning of merely a little over ($23,000.00).") Yet Hodge does not allege any additional information about the

8

circumstances under which customers of other races won and ultimately were paid the Grand Jackpot. Nor does he allege that MGM consistently refused to pay African American customers who legitimately won the Grand Jackpot. Hodge's allegations are conclusory. Without specific factual allegations, "the Court cannot plausibly infer that race—and not some other factor—was the reason" MGM refused to pay Hodge the Grand Jackpot. *See Jarvis v. Wells Fargo Bank, N.A*, No. DLB-21-687, 2022 WL 4234835, at *3–4 (D. Md. Aug. 26, 2022) (dismissing § 1981 claim when allegations of race-based discrimination were "speculative and conclusory"), *aff'd*, No. 22-1970, 2023 WL 8230506 (4th Cir. Nov. 28, 2023); *see also Nadendla*, 24 F.4th at 307 (affirming dismissal of § 1981 claim "premise[d] . . . on only vague and conclusory allegations" that her employer treated physicians of Indian descent differently from white physicians); *Wall v. Richland Cnty. Library*, No. 3:23-5010-JDA-SVH, 2024 WL 5203045, at *2 (D.S.C. Dec. 5, 2024) (dismissing § 1981 claim when plaintiff "ma[de] only the conclusory statement that [defendant's] actions were motivated by his African-American race and that 'Defendant did not treat other races the same'").

Further, Hodge's complaint suggests other, non-discriminatory facts may have caused MGM to refuse to pay him the Grand Jackpot winnings. Hodge admits that the slot machine's replay did not show him winning the Grand Jackpot. Though he complains that the replay footage was erroneous, he does not dispute that MGM employees viewed the footage and refused to pay him after watching it. The Court "must consider the plausibility of inferring discrimination based on [Hodge's] allegations in light of an 'obvious alternative explanation' for the conduct.'" *See Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 682). Here, there is such an "obvious alternative explanation": MGM did not pay him the Grand Jackpot winnings because the video footage showed that Hodge did not win the Grand Jackpot. He does

not allege any other circumstance where a person won a Grand Jackpot, the machine glitched and showed that the person won a smaller prize, and then MGM nevertheless paid them the Grand Jackpot.

In sum, Hodge has not plausibly alleged that, but for his race, MGM would have paid him the Grand Jackpot. He has failed to state a claim under § 1981.

### 2. Count Two: 42 U.S.C. § 2000a

Hodge's next claim is for racial discrimination in a place of public accommodation under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. Title II entitles all people "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A place of public accommodation includes "place[s] of exhibition or entertainment," *id.* § 2000a(b), including casinos, *see Whittman v. MGM Nat'l Harbor, LLC*, No. DLB-24-1719, 2024 WL 4607422, at *6 (D. Md. Oct. 28, 2024).

However, "§ 2000a-3(c) sets forth a prerequisite for a plaintiff seeking relief under Title II of the Act." *Hodge v. Cordish Cos.*, No. ELH-17-254, 2017 WL 3007069, at *5 (D. Md. July 14, 2017). "[I]n a state that has both laws prohibiting the alleged discriminatory conduct and state authorities that can provide relief from such conduct," a plaintiff cannot bring a suit under Title II until "'the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority. . . .'" *Stanford v. Halloway*, No. DKC-16-1355, 2017 WL 1048257, at *2 (D. Md. Mar. 20, 2017) (quoting § 2000a-3(c)). Maryland law prohibits racial discrimination in places of public accommodations. *See* Md. Code, State Gov't § 20-304. The Maryland Commission on Civil Rights ("MCCR") has jurisdiction over racial discrimination claims and can provide relief. *See id.* § 20-1004. So a plaintiff must provide written notice to the

10

MCCR and then wait 30 days before filing suit. *See Stanford*, 2017 WL 1048257, at *2; *see also Barton v. Thompson*, No. HAR-95-2154, 1995 WL 860632, at *2 (D. Md. Nov. 28, 1995).

Hodge does not allege that he gave notice to the MCCR before he filed this suit. Instead, Hodge claims that he gave the defendants notice of the suit by sending them a copy of the suit and a summons. But the notice rule required Hodge to notify the MCCR, not merely the individual defendants. Hodge also argues that notice is required only for claims arising out of an employment relationship, not a retail transaction. That is incorrect, as Hodge knows. *See Hodge*, 2017 WL 3007069, at *6 (dismissing Title II claim and holding that plaintiff customer was required to notify the MCCR before suing casino); *Hodge v. Giant of Md. LLC*, No. PWG-21-554, 2022 WL 4080317, at *4 (D. Md. Sept. 6, 2022) (dismissing Title II claim and holding that plaintiff customer was required to notify the MCCR before suing grocery store). And contrary to Hodge's arguments, "this requirement does not depend on whether the defendants are private parties or government entities." *Hodge*, 2017 WL 3007069, at *6. Hodge was required to provide notice to the MCCR before initiating suit. Hodge does not allege that he complied with that requirement. As a result, the Court must dismiss this claim.

### 3. Counts Seven and Eight: Consumer Protection Law

Hodge brings a claim under the "Fair Business Practices Act" (Count Seven) and the "Consumer Fraud & Deceptive Business Practices Act" (Count Eight). ECF 1, ¶¶ 138–45. There is no federal or Maryland statute entitled the Fair Business Practices Act or the Consumer Fraud and Deceptive Business Practices Act. In his opposition to MGM's motion to dismiss, Hodge argues that "they are Statu[t]es meaning Federal law." ECF 26-1, at 36. Hodge asserts that "Maryland and businesses in Maryland such as MGM National Harbor LLC, must be govern[ed by] and obey and not violate these two Statutes as all other states must do the same." *Id.* Even

11

construing Counts Seven and Eight of Hodge's complaint liberally, the Court cannot discern a federal consumer protection law that provides Hodge a cause of action in this case. Insofar as Hodge tried to raise federal claims in Counts Seven and Eight, he failed to state a federal claim. Counts Seven and Eight are dismissed.

### B. State Claims

With his federal claims dismissed, Hodge's only remaining claims are state law claims. They are: "pain and suffering," "embarrassment and shame," "thief," and "false misrepresentation." Setting aside the fact that many of these alleged claims are not cognizable causes of action under Maryland law, the Court does not have original jurisdiction over the state law claims because the parties are not diverse. Under 28 U.S.C. § 1367(c)(3), "[d]istrict [c]ourts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court has dismissed the federal claims over which it had original jurisdiction. The Court declines to exercise supplemental jurisdiction over Hodge's state law claims. The Court also declines to exercise supplemental jurisdiction over MGM's counterclaims, breach of contract and fraudulent inducement, which arise under state law. *See Niamath v. SCMD, LLC*, No. GLR-14-1809, 2018 WL 9945848, at *3 (D. Md. May 30, 2018) (declining to exercise jurisdiction over defendants' state law counterclaims after dismissing plaintiff's federal claim); *NRT Mid-Atl., LLC v. D'Ambrosia*, No. DKC-08-166, 2008 WL 11367473, at *7 (D. Md. Dec. 22, 2008) (same). The Court dismisses Hodge's state law claims and MGM's counterclaims without prejudice.

### IV. Conclusion

MGM's motion to dismiss Hodge's complaint under Rule 12(b)(6) is granted as to the federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental

jurisdiction over Hodge's state law claims and MGM's counterclaims. All claims are dismissed without prejudice. Because the Court is not exercising supplemental jurisdiction over MGM's counterclaims, Hodge's motion to dismiss those claims is denied as moot. His motions to file a surreply and supplement to his reply are denied. A separate order follows.

Date: February 28, 2025

Deborah L. Boardman
United States District Judge